**PIRO, ZINNA, CIFELLI, PARIS & GENITEMPO, LLC**
Michael A. Koribanick, Esq. (270442018)
360 Passaic Avenue
Nutley, New Jersey 07110
Ph:973-661-0710 F:973-661-5157
Attorneys for Plaintiff, Nicola Castelli

| | |
|---|---|
| NICOLA CASTELLI,<br><br>                    Plaintiff,<br><br>vs.<br><br>DROPOFF, INC., AMERICAN RED CROSS, JILL MULLANE, BERNARD MELTON, OMER ANGUN ABC CORPS 1-10, AND JOHN DOES 1-10 (fictitious names representing unknown Defendants),<br><br>                    Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: ESSEX COUNTY<br>DOCKET NO.: ESX-L-<br><br>          CIVIL ACTION<br><br>**COMPLAINT AND JURY DEMAND** |

        Plaintiff, Nicola Castelli (hereinafter "Plaintiff"), residing in the Township of Fairfield, County of Essex, and State of New Jersey, by way of Complaint herein states:

## THE PARTIES

1.    Defendant, Dropoff, Inc. (hereinafter "Dropoff"), at all times relevant to this Complaint, is a same-day delivery courier service which conducts business and provides services throughout the State of New Jersey.

2.    Defendant, Bernard Melton ("Defendant Melton"), at all times relevant to this Complaint, was an employee of Defendant Dropoff and was Plaintiff's manager/supervisor.

3.    Defendant, American Red Cross (hereinafter "Defendant Red Cross"), at all times relevant to this Complaint, is a non-profit organization with a Northern New Jersey office located at 209 Fairfield Road, Fairfield, New Jersey, 07004.

4.    Defendant, Jill Mullane ("Defendant Mullane"), at all times relevant to this Complaint, is an employee of Defendant Red Cross.

5.    Defendant, Omer Angun ("Defendant Angun"), at all times relevant to this Complaint, is an employee of Defendant Red Cross.

6.    Plaintiff, at all times relevant to this Complaint, was employed by Dropoff, Inc. as a medical courier, conducting business for Defendant Dropoff throughout New Jersey, until his unlawful termination on or around March 14, 2022.

## OPERATIVE FACTS

7.    Plaintiff was hired by Defendant Dropoff and commenced employment as a medical courier on or around October 10, 2020.

8.     During Plaintiff's job interview, Defendant Dropoff manager, Defendant Melton, informed Plaintiff he was required to own a vehicle that was a 2018 model or newer for use during his employment. Accordingly, Plaintiff purchased a new vehicle.

9.     Throughout Plaintiff's employment with Defendant Dropoff, he was a highly relied upon employee who excelled in performing his job duties.

10.    Throughout his employment, Plaintiff was directed by Defendant Melton and Defendant Dropoff as to where and when to perform pickups and deliveries on behalf of Defendant Dropoff.

11.    Plaintiff was supervised by Defendant Melton and [First Name Unknown] Oakley ("Oakley").

12.    Defendant Dropoff had control over Plaintiff's employment.

13.    Until encountering Defendant Mullane, an employee of Defendant Red Cross, Plaintiff had never been disciplined by Defendant Dropoff.

14.    In or around March of 2021, Plaintiff arrived at Defendant Red Cross' North New Jersey office, located in Fairfield, New Jersey, to pick up an order for Defendant Dropoff. When Plaintiff arrived at Defendant Red Cross, Defendant Mullane was the representative of the Red Cross with whom he interacted. As Plaintiff received the order from Defendant Mullane, she invited

Plaintiff to go out on a date with her. Plaintiff was uncomfortable with the invitation, but politely declined.

15. From that point forward, Defendant Mullane repeatedly invited Plaintiff on dates while he was conducting deliveries for Defendant Dropoff. Each time, Plaintiff declined.

16. Plaintiff became increasingly uncomfortable and embarrassed at the situation created by Defendant Mullane.

17. In or around June of 2021, Plaintiff was at Defendant Red Cross awaiting a pickup. While waiting, Plaintiff assisted a FedEx driver load her truck.

18. While doing so, Defendant Mullane approached Mr. Castelli and began to harass and embarrass him. Specifically, Defendant Mullane asked the FedEx driver whether she found Plaintiff attractive, and subsequently asked Plaintiff for his phone number to give to the FedEx driver so he and the FedEx driver could go out on a date.

19. Plaintiff was shocked and humiliated at the interaction but continued to assist the FedEx driver.

20. On or about July 31, 2021, Plaintiff's interactions with Defendant Mullane became increasingly hostile. On that date Plaintiff was performing his job duties for Defendant Dropoff and picked up an order from Defendant Red Cross. Shortly after Plaintiff performed his pickup, he received a text from his supervisor, Defendant Melton, informing Plaintiff that he was

suspended until Defendant Red Cross reviewed their security cameras. Plaintiff was not given a reason for his suspension at this time.

21. Soon thereafter, Plaintiff contacted Defendant Angun, a nighttime technician at Defendant Red Cross. Defendant Angun informed Plaintiff that Defendant Mullane complained to Defendant Red Cross that Plaintiff was loud and slammed his trunk when performing the pickup.

22. After Defendant Red Cross reviewed its security cameras, Plaintiff was cleared of wrongdoing. It was evident from the video security footage that Plaintiff did not engage in the behavior Defendant Mullane complained of.

23. Defendant Dropoff then informed Plaintiff that he was no longer suspended and was eligible to return to work on the following Monday, August 2, 2021.

24. Due to Defendant Mullane's false allegation, Plaintiff missed two days of work, and therefore, two days of income.

25. Soon thereafter, Plaintiff spoke with Defendant Dropoff, and specifically Defendant Melton, and informed Defendant Melton of Defendant Mullane's relentless sexual harassment towards Plaintiff.

26. Specifically, Plaintiff informed Defendant Melton of Defendant Mullane's constant sexual advances, the incident with the FedEx driver, as well as Defendant Mullane's subsequent

inquiries regarding Plaintiff's nonexistent relationship with the FedEx Driver.

27. Rather than offer support, Defendant Melton advised Plaintiff to "keep quiet" about the conduct of Defendant Mullane that Plaintiff was complaining of, as Defendant Dropoff did not want to lose business with Defendant Red Cross. Accordingly, no investigation was conducted, and Plaintiff received no support from Defendant Dropoff nor Defendant Red Cross related to his complaints.

28. Around the same time, Plaintiff again reached out to Defendant Angun. Defendant Angun advised Plaintiff to avoid Defendant Mullane, because according to Defendant Angun, she suffered from bipolar disorder.

29. Understandably, Plaintiff was terrified to carry out pickups from, or deliveries to, Defendant Red Cross, as Plaintiff did not know what Defendant Mullane may fabricate the next time, or what she was capable of going forward.

30. Defendant Mullane continued her harassment of Plaintiff. On one occasion, on or around October 31, 2021, Defendant Mullane hid plastic snakes in Plaintiff's truck to frighten and/or intimidate him. Defendant Mullane leveraged these pranks as excuses to speak with and harass Plaintiff.

31. Plaintiff brought Defendant Mullane's conduct to the attention of both Defendant Dropoff and Defendant Red Cross, and

again voiced his complaints. However, his complaints were ignored by both entities.

32.  In or about November 2021, Plaintiff received an order to pick up empty boxes from Saint Joseph's University Medical Center (hereinafter "St. Joseph's") and deliver them to Defendant Red Cross. Approximately ten minutes after Plaintiff delivered the boxes to Defendant Red Cross, he received an order to pick up boxes from Defendant Red Cross and deliver them back to Saint Joseph's.

33.  Defendant Mullane was once again the Defendant Red Cross representative with whom Plaintiff met to pick up the order. Plaintiff commented that he was confused as to why he was returning the boxes he just dropped off back to St. Joseph's. At that point, Defendant Mullane yelled at Plaintiff. Defendant Mullane told Plaintiff not to tell her how to do her job and slammed the door.

34.  Soon thereafter, Plaintiff received a phone call from Defendant Melton informing him that he was suspended by Defendant Dropoff until Defendant Red Cross performed an investigation into a complaint against Plaintiff. Plaintiff was not made aware of to the substance of the complaint.

35.  The next day, Plaintiff was informed that he could return to work, as again, Defendant Red Cross investigated and determined there was no wrongdoing on the part of the Plaintiff, as Plaintiff did not engage in the conduct Defendant Mullane complained of.

36. Plaintiff again complained to Defendant Melton and Defendant Dropoff of Defendant Mullane's sexual harassment. Plaintiff further complained to Defendant Melton that he believed Defendant Mullane was trying to get Plaintiff fired from Dropoff as retaliation for his denial of her sexual advances.

37. This was at least the third time Plaintiff engaged in a protected activity by reporting both sexual harassment and/or retaliation.

38. Again, Defendant Melton told Plaintiff to "keep quiet" because Defendant Dropoff did not want to lose the business of Defendant Red Cross.

39. Due to Defendant Mullane's conduct, as well as Defendant Dropoff and Defendant Red Cross' failure to investigate or remediate his complaints, Plaintiff was terrified to conduct pickups or perform deliveries at Defendant Red Cross and was constantly fearful that he would be subjected to sexual harassment or false complaints of wrongdoing by Defendant Mullane.

40. Despite Plaintiff's complaints, Defendant Dropoff continually required he perform pickups and deliveries at Defendant Red Cross.

41. On March 12, 2022, Plaintiff received a text message from a Defendant Dropoff dispatcher requesting he conduct a pickup of eight (8) boxes from Defendant Red Cross to be delivered to the Philadelphia Red Cross.

42. Plaintiff initially refused due to dangerous weather conditions, but Defendant Dropoff pleaded with Plaintiff to complete the order, as no other drivers were available. Being the reliable employee that he was, Plaintiff reluctantly agreed to complete the order.

43. Upon arriving at Defendant Red Cross to pick up the order, Plaintiff rang the doorbell as he did for every delivery. Plaintiff waited for a period of time and rang the doorbell again. There again was no response.

44. Plaintiff eventually texted a Defendant Dropoff dispatcher, who directed him to wait while Defendant Dropoff contacted Defendant Red Cross.

45. Subsequently, a Defendant Red Cross employee came outside and informed Plaintiff that there was no order for him to pick up. Plaintiff immediately texted the Defendant Dropoff dispatcher and informed them of the situation.

46. Plaintiff also advised the dispatcher that he would be leaving Defendant Red Cross' premises due to his concern of Defendant Mullane.

47. Approximately one hour after Plaintiff departed, he received a text from his manager, Oakley, informing him that he was suspended until an investigation was undertaken by Defendant Red Cross. Plaintiff inquired as to the reason for the suspension, but Defendant Dropoff did not respond.

48.  Plaintiff then reached out to Defendant Angun, who informed Plaintiff that Defendant Mullane reported Plaintiff for using the volunteer entrance at Defendant Red Cross during his pickup.

49.  This allegation by Defendant Mullane was completely fabricated. In fact, Plaintiff did not even enter the building. Instead, he remained on the side of the building where the doorbell is located, as he did on all previous pickups.

50.  Rather than investigate the alleged incident, on or about March 14, 2022, Plaintiff was unlawfully terminated by Defendant Dropoff. Defendant Dropoff provided no explanation for Plaintiff's unlawful termination.

51.  Notwithstanding Plaintiff's numerous complaints of harassment and retaliation, as well as being cleared of wrongdoing by Defendant Red Cross on each occasion he was alleged to have engaged in wrongdoing, Plaintiff was unlawfully terminated by Defendant Dropoff.

52.  Moreover, Plaintiff was explicitly informed by Defendant Melton, on numerous occasions, not to file a complaint with or attempt to talk to Defendant Dropoff's corporate office and/or Defendant Red Cross.

53.  Despite this demand, Plaintiff reached out to Defendant Dropoff to complain. When Plaintiff called Defendant Dropoff's corporate office directly to submit a complaint and explain what

had transpired, he was unable to get in touch with anyone with the ability to assist him.

54.   Plaintiff has suffered, and continues to suffer, from severe physical and emotional distress, economic loss, humiliation, and mental anguish.

### COUNT ONE

### SEXUAL HARSSMANENT IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1 et. seq.

55.   Plaintiff repeats and realleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

56.   During the course of his employment, Plaintiff was sexually harassed while performing his job duties and responsibilities.

57.   Defendant Mullane made numerous unwanted sexual advances and sexually motivated comments towards Plaintiff during the course of his employment.

58.   The sexual harassment went uninvestigated by both Defendant Dropoff and Defendant Red Cross despite Plaintiff's numerous complaints.

59.   Rather, Defendant Dropoff instructed Plaintiff to "keep quiet" about the sexual harassment because Defendant Dropoff did not want to lose the business of Defendant Red Cross.

60. The sexual harassment continued, and was so severe and pervasive, a reasonable person would believe that the conditions of employment were altered, and the working environment was hostile or abusive.

61. The hostile work environment sexual harassment created and fostered by the Defendants constitutes discrimination in violation of New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 et. seq.

62. As a direct and proximate result of the aforementioned sexual harassment, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this First Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

## SECOND COUNT

### UNLAWFUL RETALIATION IN VIOLATION OF THE
### NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1 et. seq.

63.  Plaintiff repeats and realleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

64.  Plaintiff engaged in protected New Jersey Law Against Discrimination ("NJLAD") activity by reporting the sexual harassment he was subjected to by Defendant Mullane to his employer, Defendant Dropoff.

65.  Defendant Dropoff had knowledge of the sexual harassment that Plaintiff was subjected to.

66.  Defendant Dropoff instructed Plaintiff to "keep quiet" about the sexual harassment because Defendant Dropoff did not want to lose the business of Defendant Red Cross.

67.  On or about March 14, 2022, soon after Plaintiff complained of sexual harassment for the third time, Defendant Dropoff unlawfully retaliated against Plaintiff by terminating his employment.

68.  As a direct and proximate result of the aforementioned unlawful retaliation, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Second Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and
equitable.

### **THIRD COUNT**

### **WRONGFUL TERMINATION IN VIOLATION OF THE**
### **NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1 et. seq.**

69.  Plaintiff repeats and realleges each of the statements
set forth in the preceding paragraphs as if same were set forth at
length herein.

70.  Plaintiff engaged in protected NJLAD activity by
reporting the sexual harassment he was subjected to.

71.  Defendant Dropoff had knowledge of the sexual harassment
that Plaintiff was subjected to.

72.  Throughout his employment with Defendant Dropoff
Plaintiff excelled in conducting his job duties and
responsibilities.

73.  On or about March 14, 2022, soon after Plaintiff
complained of sexual harassment for the third time, Defendant
Dropoff took adverse employment action against Plaintiff by
unlawfully terminating his employment.

74.  As a direct and proximate result of the aforementioned wrongful termination, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Third Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

### COUNT FOUR

### WRONGFUL TERMINATION IN VIOLATION OF PIERCE V. ORTHO PHARMACEUTICAL CORP. 84 N.J.58 (1980)

75.  Plaintiff repeats and re-alleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

76.  New Jersey has a clear public policy against wrongful termination as set forth in its common law. See, Pierce v. Ortho Pharmaceutical Corp., 74 N.J. 58, 72 (1980) ("We hold that an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy.").

77.   Plaintiff was an exceptional employee with no behavioral or performance issues.

78.   Plaintiff was terminated after he complained to Defendant Dropoff about the sexual harassment he was subjected to throughout the course of his employment.

79.   Rather than properly investigate, Defendant Dropoff instructed Plaintiff to "keep quiet" about said sexual harassment.

80.   Defendant was aware of Plaintiff's complaints, as well as his being cleared of any wrongdoing by Defendant Red Cross.

81.   Plaintiff was then terminated without a proper investigation into his complaints and allegations against Defendant Mullane.

82.   Plaintiff was wrongfully terminated on or around March 14, 2022, in violation of public policy.

83.   As a direct and proximate result of the aforementioned wrongful termination in violation of public policy, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Fourth Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

## COUNT FIVE

### UNLAWFUL CREATION OF A HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1 et. seq.

84.   Plaintiff repeats and realleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

85.   Plaintiff engaged in protected NJLAD activity by reporting the sexual harassment which he was subjected to by Defendant Mullane, during the course of his employment, to his employer.

86.   Defendant Dropoff had knowledge of the sexual harassment that Plaintiff was subjected to.

87.   The harassment experienced by Plaintiff was severe and pervasive.

88.   Plaintiff reasonably believed that the conditions of his employment had been altered, such that he was forced by Defendant Dropoff and Defendant Red Cross to consistently endure the sexual harassment of Defendant Mullane during the course of his employment.

89.   Plaintiff was forced to endure the aforementioned harassment because Defendant Dropoff did not want to lose Defendant Red Cross as a client.

90.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic loss and emotional distress.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment against the Defendant for the following:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

## COUNT SIX

### AIDING AND ABETTING IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1 et. seq.

91.   Plaintiff repeats and realleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

92.   Defendant Melton was aware of his role as part of continuing sexual harassment against the Plaintiff and aided in its furtherance.

93. Defendant Angun was aware of his role as part of continuing sexual harassment against the Plaintiff and aided in its furtherance.

94. Defendant Melton knowingly and substantially assisted the principal violation by repeatedly telling the Plaintiff to "keep quiet" about the sexual harassment he was experiencing.

95. Defendant Angun knowingly and substantially assisted the principal violation by failing to report the sexual harassment Plaintiff was experiencing to his employer, Defendant Red Cross.

96. As a direct and proximate result of the aforementioned aiding and abetting of unlawful conduct, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Sixth Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

## COUNT SEVEN

## DEFAMATION

97.  Plaintiff repeats and realleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

98.  Defendant Mullane communicated to her employer, Defendant Red Cross, several false statements about Plaintiff.

99.  Defendant Mullane made multiple false statements of fact concerning the Plaintiff, including that Plaintiff was loud and rude to her, and slammed his trunk in her presence, that Plaintiff told her how to conduct her job, and that Plaintiff entered through the volunteer entrance on one occasion, among other statements.

100. Defendant Mullane's statements were plainly intended to harm the Plaintiff's reputation with his employer and within the eyes of the community.

101. Defendant Mullane maliciously reported these fabricated incidents to Defendant Red Cross in an attempt to retaliate against the Plaintiff for denying her sexual advances.

102. As a direct and proximate result of the aforementioned defamation, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Seventh Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

### COUNT EIGHT

### TORTIOUS INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE

103. Plaintiff repeats and realleges each of the statements set forth in the preceding counts as if same were set forth at length herein.

104. Plaintiff had a reasonable expectation that his employment with Defendant Dropoff would continue, because throughout his employment with Defendant Dropoff, Plaintiff was fully able to conduct his job duties and responsibilities.

105. Defendant Mullane interfered with Plaintiff's reasonable expectation of economic advantage by intentionally sabotaging Plaintiff's reputation and succeeding in having Plaintiff terminated from his employment with Defendant Dropoff.

106. As evidenced by Defendant Red Cross' security footage, Plaintiff was cleared of all wrongdoing of all complaints by Defendant Mullane. These were all fabrications made in furtherance of the Defendant Mullane's attempt to have Plaintiff terminated.

107. As a direct result of Defendant Mullane's malicious complaints, Plaintiff was unlawfully terminated by his employer, Defendant Dropoff, and therefore Defendant Mullane tortiously interfered with Plaintiff's prospective economic relationship.

108. As a direct and proximate result of Defendant Mullane's tortious interference with Plaintiff's economic advantage, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Eighth Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

## COUNT NINE

### NEGLIGENCE

109. Plaintiff repeats and re-alleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

110. Defendant Red Cross negligently created a discriminatory and/or harassing workplace.

111. Defendant Red Cross breached its duty of care by failing to exercise due care with respect to sexual harassment in the workplace.

112. As a result of Defendant Red Cross' breach of duty, Plaintiff suffered harm.

113. As a direct and proximate result of Defendant Red Cross' negligence, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Ninth Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

## COUNT TEN

### RESPONDEAT SUPERIOR

114. Plaintiff repeats and re-alleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

115. Defendant Mullane and Defendant Angun, at all times relevant to this Complaint, were employees of Defendant Red Cross.

116. During Plaintiff's interactions with Defendant Mullane and Defendant Angun, each were acting with the scope of their employment with Defendant Red Cross.

117. Defendant Mullane engaged in the sexual harassment of Plaintiff throughout the course of his employment.

118. Plaintiff complained to Defendant Angun of the sexual harassment he was subjected to by Defendant Mullane. Defendant Angun failed to report or otherwise remedy the alleged sexual harassment.

119. Defendant Red Cross failed to implement effective sensing or monitoring mechanisms to ensure the trustworthiness or effectiveness of any policies or complaint structures.

120. As a direct and proximate result of Defendant Red Cross' aforementioned conduct, Plaintiff has suffered damages.

121. Defendant Red Cross failed to demonstrate an unequivocal commitment to preventing sexual harassment and discrimination.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Tenth Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

### COUNT ELEVEN

### FAILURE TO MAINTAIN AN EFFECTIVE POLICY AGAINST UNLAWFUL HARASSMENT AND DISCRIMINATION IN THE WORKPLACE

122. Plaintiff repeats and re-alleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

123. An effective anti-harassment and discrimination policy requires employers to investigate complaints of harassment promptly, thoroughly, and completely.

124. Plaintiff complained to both Defendant Dropoff and Defendant Red Cross of Defendant Mullane's unlawful conduct.

125. Neither Defendant Red Cross nor Defendant Dropoff investigated Plaintiff's numerous complaints of sexual harassment.

126. As a direct and proximate result of Defendant Red Cross and Defendant Dropoff's failure to investigate Plaintiff's complaints, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Eleventh Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

## COUNT TWELVE

### FICTITIOUS DEFENDANTS

127. Plaintiff repeats and re-alleges each of the statements set forth in the preceding paragraphs as if same were set forth at length herein.

128. ABC Corps 1-10 represent entities unknown to Plaintiff at this time that have sexually harassed, retaliated against, wrongfully terminated, defamed, tortiously interfered with Plaintiff's economic advantage, or created a hostile work environment for the Plaintiff.

129. John Does 1-10 represent entities unknown to Plaintiff at this time who have sexually harassed, retaliated against, wrongfully terminated, defamed, tortiously interfered with Plaintiff's economic advantage, or created a hostile work environment for the Plaintiff.

130. As a direct and proximate result of the aforementioned wrongful conduct, the Plaintiff has suffered economic loss and emotional distress.

**WHEREFORE,** the Plaintiff, NICOLA CASTELLI, demands judgment in his favor and against the Defendants on this Twelfth Count of the Complaint as follows:

1) compensatory damages;

2) pre-judgment interest;

3) punitive damages;

4) counsel fees;

5) cost of suit; and

6) any other relief that the court deems to be just and equitable.

### JURY DEMAND

Plaintiff demands trial by jury as to all matters herein.

### DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Michael A. Koribanick, Esq. as trial counsel for the within matter.

### DEMAND FOR INSURANCE INFORMATION

Pursuant to Rule 4:10(b), demand is hereby made that Defendants disclose to Plaintiff's attorney whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment and provide Plaintiff's attorney with true copies of such insurance agreements or policies including, but not limited to, any and all declaration sheets. This demand shall be deemed to

include and cover not only primary coverage but also any and all excess, catastrophe and umbrella policies.

### **CERTIFICATION PURSUANT TO RULE 4:5-1**

I certify, pursuant to Rule 4:5-1, that the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated, and that no other parties should be joined in this action at this time.

> **PIRO ZINNA CIFELLI PARIS & GENITEMPO, LLC**
> Attorneys for Plaintiff,
> Nicola Castelli
>
> **_/s/Michael A. Koribanick, Esq._**
> Michael A. Koribanick, Esq.

Dated: October 4, 2022